J-S11030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DERRICK WHITFIELD | |
| Appellant | No. 2918 EDA 2014 |

Appeal from the PCRA Order September 18, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007859-2008

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.: **FILED MAY 03, 2016**

Derrick Whitfield appeals from the order entered September 18, 2014, in the Court of Common Pleas of Philadelphia County, dismissing, without a hearing, his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*[1] In this timely appeal, Whitfield raises two issues: (1) trial counsel was ineffective in four ways, and (2) as a result of the ineffective assistance of counsel, he was effectively denied counsel in violation of both the United States and Pennsylvania Constitutions. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

_____

[1] This petition was timely filed and there has been no challenge to the timeliness of the petition. Accordingly we see no need to recite the familiar timeliness standards of the PCRA.

In February, 2009, Whitfield was convicted by jury of aggravated assault and firearms not to be carried without a license.[2] In April, 2009 he was sentenced to an aggregate term of 8 to 16 years' incarceration. His direct appeal afforded him no relief.[3] On December 1, 2011, four months after his judgment of sentence became final, he filed the instant PCRA petition. Counsel was appointed and an amended PCRA petition was filed in December 2013. After proper notice, the petition was dismissed in open court on September 18, 2014. This timely appeal follows.

Whitfield now claims four instances of ineffective assistance of trial counsel; they are: (1) failure to call Whitfield's father as an alibi witness, (2) failure to seek a line-up prior to the preliminary hearing, (3) failure to challenge the in court identifications prior to trial, and (4) failure to seek a **Kloiber**[4] charge.

Initially, we note

> Our standard of review is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. **Commonwealth v. Colavita**, 606 Pa. 1, 993 A.2d 874, 886 (2010). Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding. **Id**.

---

[2] 18 Pa.C.S. §§ 2702(a) and 6106(a)(1), respectively.

[3] **See Commonwealth v. Whitfield**, 32 A.3d 258 (Pa. Super. 2011) (unpublished memorandum).

[4] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

*Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012).

> Regarding the claims of ineffective assistance of counsel,
>
> Our standard of review when faced with a claim of ineffective assistance of counsel is well settled. First, we note that counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant.
>
> * * *
>
> > A petitioner must show (1) that the underlying claim has merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to prove any one of the three prongs results in the failure of petitioner's claim.

*Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citations omitted).

Because the facts underlying Whitfield's conviction are relevant to the determination of the instant appeal, we quote the facts as related by a panel of our Court in the direct appeal, *Commonwealth v. Whitfield*, *supra*.

> In February 2009, [Appellant] appeared for trial, pled not guilty, and elected to be tried by a jury. (N.T. 2/19/2009) at 5-7. The victim, Edward Schwarz, testified that, on the night of April 25, 2008, he was at a bar with his friends and his girlfriend. *Id*. at 22-23. Schwarz admitted that he was drunk during the relevant time period. *Id*. at 30. Schwarz testified that, during the night, he and [Appellant] had an argument and afterward he instigated a fistfight with [Appellant]. *Id*. at 22-25. Shortly after the fistfight, Schwarz's friend Glenn walked him outside to his car. *Id*. at 31-32. Schwarz stated that, as he was walking to the car, he heard somebody say something, turned around and saw [Appellant] standing about 10-20 feet away from him holding a gun. *Id*. at 33-34. Schwarz testified that [Appellant] pointed the gun at him and Schwarz threw up his hands. [Appellant] started shooting; Schwarz was struck by the gunfire and fell to the ground. *Id*. Schwarz stated that, immediately afterward, his

friends and his girlfriends ran up to him. *Id*. at 35-36. An ambulance arrived and Schwarz was taken to the hospital. *Id*.

Schwarz further testified that he was in the hospital for three days and had one surgery. *Id*. at 36. In particular, Schwarz stated: "I had an eight-screw plate, in my arm and a bone graft to fix my arm. I still have to get more surgery on my hand and my arm and possibly on my knee." *Id*. Schwarz asserted that, since the shooting, he had been in pain every day. *Id*. at 36. Medical records were later read into evidence, confirming the surgery, stating that Schwartz had a total of 14 entry and exit wounds, and showing that he was wounded in all four limbs. (N.T. 2/25/2009) at 117-19.

Schwarz asserted that there was no question in his mind that [Appellant] was the man who shot him. (N.T., 2/19/2009) at 39. Moreover, Schwarz testified that he had identified [Appellant] as the shooter at the preliminary hearing. *Id*. at 38. Defense counsel cross-examined Schwarz about the lighting conditions, and Schwarz stated that it was dark but there was sufficient light to identify his attacker. *Id*. at 76, 79. Schwarz explained that the scene was lit by street lights, house lights, and light from a gas station across the street. *Id*. at 72, 76, 79, 83.

David Firth, Schwarz's friend, corroborated Schwarz's testimony, stating that he saw [Appellant] standing over Schwarz and shooting him repeatedly as Schwarz lay on the sidewalk. (N.T. 2/20/2009) at 39. Firth stated that, after shooting Schwarz, [Appellant] jumped into the driver's side door of a black four-door car and drove away. *Id*. at 39-40. Firth admitted that he was intoxicated during the shooting and that he had originally told the police that [Appellant] had gotten in the back seat of the car and a white female had driven the get-away car. *Id*. at 40-46.

Maria Cardenas-Spicer was in the bar with a friend on the night of the shooting. *Id*. at 140. Spicer stated that she saw [Appellant] in the bar and spoke with him while smoking outside the bar. *Id*. at 142. Spicer testified that, later in the evening, she was smoking outside the bar with her friend when she heard loud pops. *Id*. at 144-45. Spicer looked down the street and saw [Appellant] shooting Schwarz. *Id*. Spicer further testified that, after the shooting, [Appellant] got into the driver's side door of a black car and drove away. *Id*. at 146-47. Spicer asserted that

the license plate number on the car containing [Appellant] was GPG2327. *Id*. at 147-48.

Kevin Clayton provided further corroboration testimony. (N.T. 2/23/2009. p. 39)[.] Clayton confirmed that [Appellant] was the man who shot the defendant [sic] and that [Appellant] escaped by getting in the driver's side door of a black Maxima with the license plate number GPG2327. *Id*. 47-54. Clayton further testified that, after the shooting, he called the police and gave them the license plate number of the getaway car. *Id*. at 51. Between 30 and 40 minutes later the police asked him to look at a car they had stopped several blocks away. *Id*. at 53-55. Clayton asserted that the car the police showed him was the getaway car. *Id*. Clayton further testified that the car was being driven by a man who was not [Appellant] and that the passenger was a girl he thought he might have seen in the bar. *Id*. at 54. Furthermore, Clayton stated that he later picked [Appellant]'s photograph out of an array. *Id*. at 61.

Police officer Joseph Corrigan testified that he was informed of the shooting over the police radio and told that a vehicle with plate number GPG2327 was involved. (N.T. 2/25/2009 pp 38, 48). Around 2 AM on April 26, Detective Kelly stopped a black Chevrolet Malibu car with license plate number GPG2327. *Id*. at 43. Officer Corrigan stated that Derrick Whitfield Sr.- [Appellant]'s father- was driving the car and that Regina Whitfield was in the passenger seat. *Id*. [at] 48. Officer Corrigan further asserted that the car and its passengers were shown to a number of witnesses to the shooting and none of these witnesses identified Derrick Whitfield Sr. as the shooter. *Id*. at 50. Furthermore, Officer Corrigan testified that Derrick Whitfield Sr. was the owner of the Black Malibu and the [sic] he lived at 4511 Aberdale in Philadelphia where the car was registered. *Id*. at 65-66. A search warrant was executed on a vehicle with the license plate number GPG2327. (N.T. 2/23/2009 p 154). No gun was found. *Id*. at 153-54. Detective Brian Kelly testified, however, that a search warrant was also executed for 4511 Aberdale. *Id*. at 139. This search recovered mail sent to [Appellant] at that address.

***Commonwealth v. Whitfield***, ***supra***, at 2-5.

Whitfield first argues trial counsel was ineffective for failing to call his father to testify that Whitfield returned to his father's home immediately after the fight in the bar, and that Whitfield's father subsequently left the house to pick up Whitfield's wife, who was apparently walking home from the bar on her own. Without addressing the substance of this claim, we note that during trial, Whitfield was duly sworn and participated in an oral colloquy regarding whether he wanted to testify on his own behalf or wanted to present any other witnesses on his behalf. Whitfield asserted he had discussed the presentation of evidence with his counsel and did not want to present any witnesses. *See* N.T. Trial 2/25/2009, at 89-92. Accordingly, he cannot now argue counsel was ineffective for failing to call a witness. See *Commonwealth v. Muhammad*, 794 A.2d 378, 384 (defendant cannot contradict statements made under oath during colloquy).[5] Further, we note that the Commonwealth attempted to subpoena Whitfield, Sr., but Whitfield objected, claiming any testimony from his father would be irrelevant. *Id*. at 9. Having objected to having his father testify at trial, as well as confirming he was not going to present any witnesses on his behalf, the instant claim

---

[5] *Muhammad* addressed statements made under oath during a guilty plea colloquy. Instantly, Whitfield was also under oath when he was under colloquy regarding presentation of witnesses. We see no reason why a defendant, under oath, should not be bound by his or her statements in that circumstance. Accordingly, we believe *Muhammad* is applicable to this matter.

that counsel was ineffective for failing to call Whitfield's father as a witness is clearly frivolous.

Whitfield's next three arguments all address different aspects of his identification. First, he claims trial counsel was ineffective for failing to request a line-up prior to the preliminary hearing. The PCRA court found that the counsel's failure to request a pre-trial line-up was "reasonable under the law and facts of this case." *See* Trial Court Opinion, 7/21/2015, at 8-9. The PCRA court noted there is no constitutional right to line-up. *See Commonwealth v. Edwards*, 762 A.2d 382, 391 (Pa. Super. 2000). Further, the totality of the circumstances, including multiple identifications from independent witnesses, who all claimed they had ample opportunity to view Whitfield either in the bar, or in the act of shooting Schwarz and fleeing in Whitfield's father's car, as well as testifying as to the sufficiency of ambient light outside at the shooting scene led to a strong indicia of reliability of the identification of Whitfield without a line-up. *Id.* (applying totality of circumstances analysis to determine prejudice for lack of line-up).

Next, Whitfield claims trial counsel was ineffective for failing to file a motion to suppress the pre-trial identifications by the witnesses. Whitfield argues because the witnesses collectively identified the get-away vehicle, and were collectively transported to the police station and waited to be interviewed in the same room, the identification process was subject to impermissible taint. This claim is unavailing.

The PCRA court noted that the witnesses were interviewed separately and independently identified Whitfield from the photo array. Moreover, all the witnesses testified they did not discuss the identity of the assailant while being transported or while awaiting interview. Even though the witnesses may have identified the vehicle in the presence of each other, that fact alone does not render the identification improper. *See Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003) (absent some special element of unfairness, instantly similar identification process not tainted).[6] The lack of taint regarding the identification of the vehicle is further supported by the fact that two witnesses, before they knew who the assailant was, gave the license plate number of the get-away vehicle to the police and that license plate belonged to Whitfield's father.

In light of the above, the PCRA court determined trial counsel was not ineffective for failing to litigate an unsupportable motion. Our review confirms that determination. *See Commonwealth v. Fears*, 86 A.3d 795, 811 (Pa. 2014) (counsel cannot be deemed ineffective for failing to raise an unsupportable issue).

Whitfield's final claim of ineffective assistance of counsel is that trial counsel failed to request a *Kloiber* charge. The PCRA Court properly noted

---

[6] We are aware that *Moye* involves the identification of the defendant, rather than a vehicle. However, we see no reason why the standard would change due to that fact.

that a **Kloiber** charge is "appropriate 'where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past.'"  PCRA Court Opinion, 7/21/15, at 10, *citing* **Commonwealth v. Reid**, 99 A.3d 427, 448 (Pa. Super. 2014) (interior quotation marks omitted).  In response to Whitfield's claim, the PCRA court stated:

> Here, a **Kloiber** charge was not warranted.  No witness failed to identify [Whitfield] prior to trial and all were in positions to clearly observe him during the incident.  Maria Cardenas-Spicer spoke with [Whitfield] outside of the bar before the shooting and knew him by name.[7]  Kevin Clayton bumped into [Whitfield] inside the bar and saw him outside from thirty feet away with an unobstructed view.  Edward Schwarz recognized [Whitfield] from the fight inside the bar and testified he saw [Whitfield] clearly when he stood over him and shot him multiple times.
>
> All three witnesses unequivocally identified [Whitfield] as the shooter.  All three recognized him from prior interactions that evening.  A **Kloiber** charge would not have been granted.

PCRA Court Opinion, 7/21/2016, at 11.

The certified record supports the PCRA court's determinations and we find no error or abuse of discretion therein.  Accordingly, trial counsel cannot have been ineffective for failing to raise a non-meritorious issue.  **See Commonwealth v. Fears**, **supra**.

_____

[7] To clarify, although Cardenas-Spicer and Whitfield met for the first time that night, the evidence showed they spent enough time together that evening for Cardenas-Spicer to learn Whitfield's name.

Finally, Whitfield argues that in light of the errors committed by trial counsel, he was effectively abandoned by counsel during his trial. This is essentially a claim of cumulative error. This claim warrants no relief.

> We have held that no number of failed ineffectiveness claims may warrant relief collectively if they fail to do so individually. *Commonwealth v. Elliott*, 622 Pa. 236, 80 A.3d 415, 450 (2013). As we have found no merit to any individual claim of ineffectiveness, there is no prejudice for this Court to consider in the aggregate.

*Commonwealth v. Staton*, 120 A.3d 272, 295 (Pa. 2015).

Accordingly, Whitfield's final claim also fails.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2016